UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLINTON A. MILEY, JR., CLAY APPLEWHITE, DEAN BOREL, MICHAEL D. CRAIN, CURTIS CREEL, MICHAEL BRETT EVANS, MICHAEL FREEMAN, FREDERICK K. GODBOLT, BRIAN GOINGS, TONY GRANGER, WESLEY A. HARPER, PAUL B. HARRIS, JR., JERRY JAMES HEMPHILL, MARK A. JOHNSON, DORMAN K. KELLIS, III, DAVID R. KENNY, II, DONALD R. LADNER, RONALD MANNING, BRIAN MCCREE, RYAN MCGHEE, SCOTT A. MILLER, RICHARD MOODY, STEVEN A. MOSES, J. MICHAEL PIERCE, ANDREE' R. POWELL, HAROLD B. REID, LE' DON ROBINSON, ROBERT C. ROBINSON, JAMES TODD RUSHING, BRUCE B. TABER, AARON THOMAS, JOHN C. VARNADO, CHRIS WILLIAMS, and GRAHAM WOLBRECHT | CIVIL ACTION NO.:  08-4080<br><br>JUDGE:  MARY ANN VIAL<br>          LEMMON<br><br>SECTION "S"<br><br>MAGISTRATE:  SALLY SHUSHAN |
| versus | |
| CITY OF BOGALUSA | |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

A.   FACTUAL BACKGROUND

Bogalusa Firefighters work pursuant to the terms of a collective bargaining agreement (CBA) entered between the City of Bogalusa and the Bogalusa Professional Firefighters Association, Local #687 (Union), on April 19, 1989, and continued year to year since its original term ended in 1991.  Article IV of the CBA pertaining to Hours of Work provides in pertinent part as follows:

> The starting and quitting time for employees shall be fixed by the Employer and shall be subject to change in accordance with the needs of the Employer and the necessity of providing fire protection to the citizens of the City of Bogalusa twenty-four hours a day seven days a week.  **The normal working hours shall be twenty-four hours on and forty-eight hours off and shifts shall be**

> **arranged and working assignments made in accordance with this schedule**. As these working hours which were requested by the Union and have been in effect for a number of years result in at least one out of every three work weeks being in excess of the sixty hours provided by law, the Union, on behalf of its members, does hereby waive any overtime pay for any hours of work in excess of sixty hours per calendar week resulting from this working schedule and have requested each employee to personally execute a waiver of overtime to this extent. However, any firefighter called back to work other than pursuant to a regular shift shall be paid overtime at the rate of one and one-half times his usual salary to be determined by reducing his average monthly salary to an hourly scale, based on 212 hours per month and to include State Supplementary Pay; all in addition to his regular monthly salary.[1] (Emphasis added).

The CBA further states:

> [E]ach employee who has signed a written waiver of the provisions of Louisiana law requiring payment of overtime for all work in excess of sixty hours per week (R.S. 33:1994) shall be paid each month that he works a sum equal to twelve hours of pay computed at overtime rate of pay, all in lieu of the overtime pay required by such law.[2]

As provided in the CBA, Article IV, firefighters are scheduled to work in three-day cycles of one day (24 hours) on and two days (48 hours) off, and actually work this schedule. Firefighters are given a payment each month equal to 12 hours of "overtime" pay per month regardless of their hours worked. They are paid on the fifteenth and the last day of the month. One pay period is from the twenty-first of the prior month to the tenth of the current month, with the other pay period from the eleventh through the twentieth.[3] Therefore the pay periods vary in

---

[1] *See* CBA attached to City's Response to Plaintiffs' Interrogatories and Request for Production of Documents, attached herein as Exhibit 1-A, p. 9. The CBA references a Louisiana Attorney General opinion dated April 6, 1973, that is appended to the CBA and predates the application of the FLSA to municipalities. *Garcia v. San Antonio Metropolitan Transit Authority,* 426 U.S. 833 (1985). The Louisiana Attorney General opines that firemen can permissibly waive the protections of La. R.S. 33:1994, requiring work over 60 hours during a calendar week to be compensated at one and one-half the usual salary. The letter further evidences that Bogalusa firefighters were working the same three-day cycle in 1973 that they work today; however, La. R.S. 33:1994 has been amended to take into account the FLSA.
[2] Exhibit 1-A, p. 13.
[3] Depo. Excerpts of Patty Sandifer, pp. 6-7, attached herein as Exhibit 7.

length, depending on the month. In each pay check, they are paid for 120 hours of regular pay.[4] However, their schedules require them to work 48 hours most weeks, and for 72 hours in some weeks, many more than the usual 40-hour work week.[5] Firefighters who had long questioned their pay and overtime calculations, in 2007, sought answers from the City administration to determine if they were being paid for all of the overtime hours to which they were legally entitled.[6] Although Miley has been employed by the City for 17 years and has served as the Union President for five years, and Michael Freeman has served the City as a firefighter for 19 years, neither was aware of any memorandum or announcement by the City adopting a work period under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(k), nor could they fathom their pay calculations.[7] After informal requests and a written public records request to clarify firefighter pay issues were ignored, Miley and other firefighters filed this suit.[8]

In answer to discovery requests to provide "copies of all documents that reflect the City's or the Bogalusa Fire Department's establishment of a work period and/or an overtime exemption under Section 7 (k) of the FLSA for the determination of overtime in the Fire Department," the City provided the CBA and a "formula,"[9] actually a handwritten calculation. The City has not been able to determine the genesis of this formula, nor any other documents that reflect adoption of a §7(k) work period, or explain the reason for the formula used.[10]

---

[4] Exhibit 7 (Sandifer), pp. 7-9.
[5] 29 U.S.C. § 207(a).
[6] Miley Declaration attached herein as Exhibit 2.
[7] *See* Depo Excerpts of Karen Clampit attached herein as Exhibit 4, p. 46 (Though declining to admit that City's payroll is a "complete mess," acknowledges that payroll practices are "inconsistent" and that it would be "difficult" for employees to understand the system); Freeman Declaration attached herein as Exhibit 3, ¶¶ 2, 4, 5; Exhibit 2 (Miley), ¶¶ 3, 4, 5, 7.
[8] Exhibit 2.
[9] Exhibit 1 & 1-C.
[10] Depo. Excerpts of Dale Branch, pp. 6-7, 15-17, 39, 41, attached herein as Exhibit 6.

In response to a request to "produce all documents, including memoranda, employee manuals, handbooks, and other policies and procedures of the City of Bogalusa that govern and or reflect the pay, overtime pay practices, and schedules of fire suppression and prevention employees from July 30, 2000 to the present," the City produced the same formula and the CBA.[11] Nothing produced by the City evidences the City's having established or adopted a work period other than the three-day cycles that firefighters actually work.[12]

B.   ARGUMENT

    1.   Summary Judgment Is Proper.

Federal Rule of Civil Procedure 56 mandates summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[13]  In *Leonard v. Dixie Wells Service & Supply, Inc.*,[14] the Fifth Circuit synthesized the holdings of three Supreme Court decisions on the appropriate standard for determining whether parties have raised a genuine issue of fact.[15]  The Fifth Circuit stated that "where the record taken as a whole could not lead a rational trier of fact to find for the moving party, there is no genuine issue for trial."[16]  Once the movant has "inform[ed] the district court of the basis of its motion and identif[ied] those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact," the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[11] Exhibit 1 & 1-C.
[12] Exhibit 7 (Sandifer), pp. 52-53.
[13]*Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994).
[14]828 F.2d 291, 293-94 (5th Cir. 1987).
[15]*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242 (1986).
[16]*Leonard*, 828 F.2d at 294 (quoting *Matsushita*, 475 U.S. at 586).

bear the burden of proof at trial."[17]  A sufficient showing cannot rest on "mere allegations or denials" in the pleadings, but must set forth "specific facts" that establish an issue for trial.[18]

The purpose of the summary judgment procedure is to eliminate the cost and delay of trial in cases where trial would be a useless formality.[19]  Summary judgment is appropriate in *any* case where the evidence is so weak it could not support a judgment in favor of the non-moving party.[20]  Summary judgment is proper for resolving issues that arise under the Fair Labor Standards Act.[21]

2.  Bogalusa Did Not Adopt Section 7(k).

The Fair Labor Standards Act (FLSA) §7(a), 29 U.S.C. §207(a), "expresses the intention of Congress 'to require extra pay for overtime work by those covered by the Act even though their hourly wages exceeded the statutory minimum.'" The purpose is not only to compensate those who work more than the statutory maximum number of hours for "the wear and tear of extra work," but also "to spread employment through inducing employers to shorten hours because of the pressure of extra cost.[22]  Section 7(a) of the FLSA requires an employer to pay an employee overtime compensation at a rate of one and one half times the regular rate after the employee has worked more than 40 hours in a week.[23]  The right of an employee to receive overtime is statutory and one which neither a labor union nor an employee can waive.[24]

---

[17] *Id*. (quoting *Celotex*).
[18] *Leonard*, 828 F.2d at 294 (quoting *Anderson*).
[19] *Zweig v. Hearst Corp*., 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025 (1975).
[20] *Little*, 37 F.2d at 1075-76.
[21] *See, e.g., Harris v. City of Boston*, 312 F.Supp.2d 108 (D. Mass. 2004).
[22] *Bay Ridge Operating Co. v. Aaron*, 344 U. S. 456, 459 (1948).
[23] 29 U.S.C. §207 (a)(1); *Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003).
[24] *Barrantine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir.1990); *Martin v. PepsiAmericas, Inc.* 2008 WL 4755394, *3 (N.D. Miss. 2008).

But the FLSA does provide a partial exemption for entities that employ firefighters and police.[25]

Under 29 U.S.C. §207(k), a municipality can take advantage of that exemption by adopting a work period of between 7 and 28 days. If the municipality adopts a 7-day work period, it need not pay overtime compensation to its fire fighters until they have worked over 53 hours in a single week.[26]

"Section 7(k) of the Act provides a partial overtime pay exemption for fire protection and law enforcement personnel . . . who are employed on a work period basis."[27] As used in Section 7(k), the term "work period" is "any established and regularly recurring period of work which cannot be less than seven consecutive days and no more than 28 consecutive days. Except for this limitation, the work period can be of any length and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day."[28]

The §7(k) exemption softens the impact of the FLSA's overtime requirements by raising the average number of hours the employer can require police and fire fighters to work without triggering the overtime requirements and by accommodating the unpredictable nature of police and fire fighting work.[29] However, exemptions from overtime provisions are narrowly construed against the employer,[30] and the FLSA is to be liberally construed in favor of its intended beneficiary, the employee.[31] The City bears the burden of proving by a preponderance of the

---

[25] 29 U.S.C. §207(k). The same rule applies to police, and court decisions pertaining to law enforcement are equally applicable.
[26] *Waco*, 324 F.2d at 818 (citing 29 C.F.R. §§ 553.201(a); 553.230 (a)).
[27] 29 C.F.R. §553.201.
[28] 29 C.F.R. §553.224(a).
[29] *O'Brien v. Town of Agawam*, 350 F.3d 279, 290 (1st Cir. 2003); *Washington v. City of Montgomery,* 935 F.2d 222, 224 (11th Cir. 1991); *Harris v. City of Boston*, 312 F.Supp. 2d 108, 112 (D. Mass. 2004).
[30] *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 296 (1985) *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992).
[31] *Mitchell v. Lublin, McGaughey & Assoc.*, 358 U.S. 207, 211 (1959); *Birdwell*, 970 F.2d at 805.

evidence that it has adopted a §7(k) work period.[32] The Act authorizes the Secretary of Labor to determine the scope of the exemption.[33] DOL regulations, which are the primary source of guidance on the scope and extent of FLSA exemptions, are entitled to deference.[34] The "ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law."[35]

Municipalities have proved adoption of the §7(k) exemption by various means, including evidence of memoranda or ordinances publically declaring the intent to adopt a work period of between seven to 28 days and by employees' actual work schedules.[36] In *Birdwell v. City of Gadsden*,[37] the Eleventh Circuit ruled that the city without contrary evidence from the plaintiffs had proved that it had adopted a §7(k) work period by offering evidence that its police officers worked in seven-day cycles — five days on with two days off, had a seven day pay period, and had a contract adopting a seven day work week. Despite the fact that the police officers' collective bargaining agreement provided for overtime after 40 hours in a week, the dispositive issue was whether the officers had actually worked cycles of between seven and 28 days; even if the City had potentially violated the agreement, it did not violate the FLSA.[38]

In *Lamon*, by comparison, the city presented sufficient evidence under §7(k) by proving that it had adopted an administrative code which set forth its 28-day work period, even though its

---

[32] *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Singer*, 324 F.3d at 820; *Lamon v. City of Shawnee,* 972 F.2d 1145, 1153-54 (10th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).
[33] 29 U.S.C. § 213(a)(1).
[34] *Agawam*, 350 F.3d at 291 n.22; *Spradling v. City of Tulsa,* 95 F.3d 1492, 1495 (10th Cir. 1996).
[35] *Singer*, 324 F.3d at 818.
[36] *McGrath v. City of Philadelphia*, 864 F.Supp. 466, 476 (E.D. Pa. 1994) (Establishment of §7(k) work period may be manifest by public declaration, but "cannot be established unless employees actually work rotation of days contemplated in the work period adopted.")
[37] 970 F.2d 802, 806 (11th Cir. 1992).
[38] 970 F.2d at 806.

scheduling and compensation practices did not change after the adoption.[39] The administrative code set forth a 28-day work period during which each police officer worked 20 shifts and was paid once every fourteen days.[40] In *Milne v. City of Hazelwood*,[41] the city proved a §7(k) work period by presenting a memorandum that had announced it, and by showing that employees were scheduled on a "regularly recurring 28-day basis."

In *O'Brien v. City of Agawam*,[42] the First Circuit concluded that the record did <u>not</u> support the town's having established a qualifying §7(k) work period. The record showed that officers worked repeating six-day cycles (four days on, two days off), which schedule was confirmed by the collective bargaining agreement. Although the town could theoretically have established a §7(k) period that differed from the cycle actually worked and set forth in the agreement, there was no evidence that it had done so.

In *Singer v. City of Waco*,[43] the parties agreed that the city has adopted a §7(k) period but disagreed whether the work period was fourteen or 28 days. Although the city produced a memorandum from the fire chief stating that the city was establishing a 28-day work cycle, the plaintiffs rebutted this evidence with testimony that the pay period was 14 days, that the work period was the same as the pay period, and that the city calculated overtime on a 14-day basis. Therefore, the memorandum was not dispositive, and the jury could have concluded that the city had established a 14-day work period. In the present case, it is uncontested that Miley and other plaintiff Bogalusa firefighters actually work a three-day cycle — one day (24 hours) on duty and two days (48 hours) off, which work schedule is confirmed by the CBA.[44] On the other hand,

---

[39] 972 F.2d at 1152.
[40] 972 F.2d at 1148.
[41] 165 F.3d 1222, 1223 (8th Cir. 1997).
[42] 350 F.3d 279, 291 (1st Cir. 2003).
[43] 324 F.3d at 820.
[44] Exhibit 2 (Miley), ¶6; Exhibit 3 (Freeman), ¶6; Exhibit 3-A.

their pay schedule is bi-monthly on the fifteenth and last day of the month, and the pay periods vary in length.[45] This pay schedule would not be a work period under §7(k) since the number of days in the period varies depending on the days in the month, and a work period must be "regularly recurring."[46] The City has provided no statement or announcement — nor are plaintiffs aware of any — that it has adopted any seven to 28-day period for §7(k) purposes.[47] Indeed, it was because Miley could not understand how his paycheck was calculated, and could get no answers from the City administration, that this lawsuit was initiated.[48] In fact, the City has taken <u>no</u> steps to avail itself of the § 7(k) exemption, and its three-day work cycle demonstrates that the City has no need to avail itself of the exemption, since it has not taken advantage of the need for a longer working period.

Dale Branch, who served as City Attorney for the City since 1984, and who was designated by the City as the witness who could best answer questions relating to the City's payroll practices, tried to determine the genesis of the firefighter pay formula, but could not.[49] He himself did not conceive the formula, and has very little personal knowledge of the City's payroll practices and procedures.[50] Branch could not locate any documents that reflected that the City adopted any work period other than 24 hours on and 48 off, or any documents that reflect adoption of a 7(k) exemption.[51] Nevertheless, he posited that the use of the number 212 as the divisor in calculating overtime pay, was sufficient to establish the § 7(k) exemption.[52]

---

[45] Exhibit 2 (Miley), ¶1; Exhibit 3 (Freeman), ¶1; Exhibit 1-A; Exhibit 7 (Sandifer), pp. 6-7.
[46] 29 U.S.C. §533.224.
[47] Exhibit 2 (Miley), ¶¶ 3 & 4; Exhibit 3 (Freeman), ¶¶ 4 & 5.
[48] Exhibit 2 (Miley), ¶7.
[49] Branch Depo. Excerpts attached herein as Exhibit 6, pp. 6-7, 15-17, 24.
[50] Exhibit 6 (Branch), p. 24.
[51] *Id.*, pp. 39, 41.
[52] *Id.*, pp. 44, 49-51.

29 C.F.R. § 553.224 shows that if an employer adopts a 28-day period, it only pays overtime after employees work 212 hours in that work period. But even the City's expert, Don Strobel, acknowledged that the City had not qualified for the 28-day work period.[53] Instead of presenting facts to support that the City has established a §7(k) period, the City of Bogalusa has instead offered the "expert" opinion of two former DOL Wage & Hour investigators, Don Strobel and Karen Clampitt, whose joint report and opinion are based on the assumption that the City is entitled to the §7(k) exemption even absent any affirmative act to adopt a seven to 28-day period; conveniently — according to the City's "experts" — the City is entitled to the partial exemption based solely on the fact that its employees are performing firefighting duties. According to the City's experts —although they could cite to absolutely no authority for their position — this was the practice of the DOL, Wage and Hour Division during their tenure.[54] Of course it is this Court's duty — not the City's expert — to determine the law.[55]

---

[53] Exhibit 5 (Strobel), p. 45.

[54] See Report of Strobel and Clampitt, attached herein as Exhibit 8, p. 4 ("There may be instances when a public agency may chose not to claim the 7(k) maximum work period of 28 days for firefighters. When this occurs the public agency may still claim a 7 day work period with a maximum standard of 53 hours per week as the standard, not 40 hours per week maximum."); Strobel Depo. Excerpt, pp. 43-44, 46-47 ("But if somebody is engaged in firefighting . . . my opinion is, and I think the regulations - - or my opinion of interpreting the regulations, and I believe the U.S. Department of Labor takes the same position is they can only go down to the 53 hours a week. Even if they never heard of 7(k), if the person is performing those type of activities, they would be entitled to overtime after 53 hours a week. It would not revert to 40 hours a week"), attached herein as Exhibit 5; Clampitt Depo. attached herein as Exhibit 4, p. 19 ("It's my opinion that the 7(k) work period or 7(k) exemption is allowed as long as we are talking about firefighters and law enforcement."), p. 20 ("When I wrote the report, I don't think I was relying on any regulation. It's just my knowledge of working - - working knowledge of the law and how it applied.").

[55] See Alldread v. City of Grenada, 988 F.2d 1425, 1436 -1437 (5th Cir. 1993) (district court's decision to exclude "expert" testimony of a DOL investigator was not manifestly erroneous where testimony would have been inadmissible legal conclusions); Valladon v. City of Oakland, 06-07478, 2009 WL 585804 (N.D. Cal. 3/5/09) (rejecting testimony of former DOL wage and hour investigator who was trying, not to assist the jury in understanding the evidence or facts at issue, but to understand the law itself, which is the exclusive province of the trial judge).

To the contrary, however, the position of the DOL, according to its own regulations and opinion letter, is not as Strobel and Clampitt report, but the opposite — that an employer is <u>not</u> relieved of its §7(a) overtime pay obligations unless it has both affirmatively claimed the exemption and also paid overtime under the exemption.  The DOL regulations themselves define "work period" as "any established and regularly recurring period of work."[56]  The First Circuit in *Agawam* noted that that the work period must be both "established *and* regularly recurring."[57]  If Strobel and Clampitt were correct, the regulation would have defined "work period" as "any regularly recurring period of work," and simply omitted "established."  Further, 29 C.F.R. §553.51 requires employers who claim a §7(k) exemption to maintain and preserve records supporting this exemption.  Moreover, DOL Opinion Letter January 13, 1994, states that "an employer is not relieved from §7(a) overtime compensation unless §7(k) has been claimed <u>and</u> affected employees have actually been paid in accordance with its provisions."[58]  Clampitt and Strobel's opinion in this regard is simply wrong.

Also, the number 212 used to calculate the overtime rate, is insufficient as a matter of law to establish another work period in light of the three-day cycle actually worked.  DOL Regulation 29 C.F.R. §553.230 provides:

> (a) For those employees engaged in fire protection activities who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relation to 212 as the number of days in the work period bears to 28.

But here there is no evidence that the City ever established a 28-day work period; 28 days is not part of their pay period, their duty cycle, or the schedule that firefighters actually work.

---

Plaintiffs have filed a motion to strike the City's expert report and testimony to the extent that it invades the province of the court.
[56] 29 C.F.R. §553.224(a).
[57] 350 F.3d at 291.
[58] 1994 WL 1004749 (emphasis added).

No City employee was able to explain why the number 212 was used in the overtime calculation. Patty Sandifer of the City's payroll department testified that she did not know why she divided the monthly salary by 212 and acknowledged that that number did not relate to the number of hours worked.[59] She used 212 simply because that was the number she was given.[60] But even if one were to assume that the number was associated with a work period, that by itself is insufficient as a matter of law to establish a 28-day period.

In *Agawam*, the "sole question was whether the Town ha[d] adopted a qualifying work period . . . ."[61] If an alternate work period under §7(k) is not chosen, the regular overtime provisions of §7(a) apply.[62] Here, the City of Bogalusa placed its employees on a three-day work cycle and failed to establish a work period under §7(k). Therefore it is not entitled to take advantage of the partial overtime exemption under 29 U.S.C. §207(k), but instead must calculate firefighter pay pursuant to 29 U.S.C. §207(a)(1), paying one and one half the regular rate after 40 hours in a week.

In *McGrath v. City of Philadelphia*,[63] the city tried to establish that it had adopted a §7(k) exemption by proving that it implemented a 13-day cycle, that most of the plaintiffs actually worked that 13-day cycle, and that the city took affirmative steps to announce the adoption of the schedule through an informational memorandum highlighting the 13-day rotational cycle. But because the collective bargaining agreement called for a 40-hour work week the district court

---

[59] Exhibit 7 (Sandifer), pp. 18-21.
[60] Exhibit 7 (Sandifer), p. 55.
[61] 350 F.3d at 291.
[62] *Agawam,* 350 F.3d at 291, n.21 ("[I]f the employer fails to announce and take bona fide steps to implement a qualifying work period, the ordinary overtime provisions of §201(a) will apply"); *Birdwell*, 970 F.2d at 806; *Harris v. City of Boston*, 312 F.Supp. 2d 108, 114 (D. Mass. 2004); *Maldonado v. Administration de Correccion*, 1993 WL269650, *3 (D.P.R. 1993).
[63] 864 F.Supp. 466, 476 (E.D. Pa. 1994).

denied summary judgment. In *McGrath*,[64] the court summarized other FLSA decisions that had addressed summary judgment motions. It noted that in *Birdwell*,[65] the Eleventh Circuit court concluded that summary judgment would be proper based on uncontradicted evidence that the officers worked seven-day cycles which work cycle was also called for in the contract. By comparison, in *Lamon*,[66] the administrative code adopted a 28-day work period while the collective bargaining agreement provided for overtime after 40 hours per week; therefore the issue warranted submission to the jury. The present case is like *Birdwell* because the plaintiffs actually work a three-day cycle which is consistent with the CBA. In *O'Brien v. Town of Agawam*,[67] the town produced nothing indicating that it had adopted a work period longer than six days. Similarly, the City here has produced no evidence sufficient to carry its burden of proof that it adopted a work period of between seven to 28 days. Therefore summary judgment is appropriate.

C.  CONCLUSION

For the reasons stated above, Miley and other plaintiffs are entitled to partial summary judgment on the issue of liability—that the City of Bogalusa failed to adopt a §7(k) exemption and is required to pay its firefighters overtime under the regular overtime provisions of §7(a), at time and one half after 40 hours each week.

---

[64] 864 F.Supp. at 478-79.
[65] 970 F.2d at 806 & n.2.
[66] *Lamon v. City of Shawnee*, 88-4200, 1990 WL 186280*8 n. 2. (D. Kan. 10/4/90).
[67] 350 F.3d at 291.

Respectfully submitted,

ROBEIN, URANN, SPENCER, PICARD & CANGEMI, A.P.L.C.

s/ Nancy Picard
Louis L. Robein, Jr. (Bar No. 11307)
Nancy Picard (Bar No. 19449)
Christina L. Carroll (Bar No. 29789)
P.O. Box 6768
2540 Severn Avenue, Suite 400 (70002)
Metairie, Louisiana 70009-6768
Phone:  (504) 885-9994
Fax:  (504) 885-9969
E-mail:  lrobein@ruspclaw.com
E-mail:   npicard@ruspclaw.com
E-mail:  ccarroll@ruspclaw.com
Counsel for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2009, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

s/Nancy Picard
Nancy Picard (Bar No. 19449)
Robein, Urann, Spencer, Picard & Cangemi
P.O. Box 6768
2540 Severn Avenue, Suite 400 (70002)
Metairie, Louisiana 70009-6768
Phone:  (504) 885-9994
Fax:  (504) 885-9969
E-mail:   npicard@ruspclaw.com
Counsel for Plaintiffs

F:\APPS\WP51\CLIENTS\Bogalusa Firefighters\_FLSA\Pleadings\Mtn_SJ_Memo.doc